Michael Sammons, pro se
15706 Seekers St
San Antonio, TX 78255
michaelsammons@yahoo.com

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

14 APR 28 PM 1: 19

OFFICE OF THE CLERK

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

Elena Sammons
Michael Sammons
    Plaintiffs

vs.

Case No. 8:14CV136

COR Clearing, LLC
Cede & Co.
The Depository Trust Company
    Defendants

## COMPLAINT

Plaintiffs, **Michael and Elena Sammons**, pro se, file this Complaint seeking two declaratory judgments against **COR Clearing, LLC** ("COR"), **Cede & Co.** ("Cede"), **The Depository Trust Company** ("DTC"), and allege as follows:

### THE PARTIES

1. Plaintiff Elena Sammons is a resident and citizen of the State of Texas. Elena Sammons was the beneficial owner of 650,000 shares of China Energy Corporation ("CEC"), held in a retirement account with stockbroker Just2Trade.

1

2. Defendant Cede & Co. is the shareholder of record for the 650,000 shares of CEC.  The primary place of business of Cede & Co. is New York City, New York.

3. Defendant DTC is the nation's largest securities depository; its nominee Cede & Co. is the registered owner of certificated and uncertificated/book-entry stocks and bonds for its participants which include COR Clearing.  The DTC and Cede hold millions of shares of stock in trust for thousands of citizens of Nebraska through numerous brokers doing business in Nebraska.  The primary place of business of DTC is New York City, New York.

4. Defendant COR Clearing is a participant of DTC and is responsible for the clearing and settlement of stock trades of customers of Just2Trade, including Elena Sammons.  The primary place of business of COR Clearing is Omaha, Nebraska.

5. Michael Sammons is a resident and citizen of the State of Texas, and is married to Elena Sammons.

6. All funds in the retirement account with Just2Trade were earned and deposited by Elena Sammons while Michael and Elena Sammons were married and living in Texas, a community property state.

7. Michael Sammons has an equal community property financial interest in all assets held in the retirement account in the name of "Delaware Charter Guarantee & Trust FBO: Elena Sammons R/O IRA", including the 650,000 shares of CEC, see Texas Family Code

§ 3.002, §3.003, and § 3.102(c), and had primary responsibility to control and manage such retirement account.[1]

## JURISDICTION AND VENUE

8. Jurisdiction of this Court exists pursuant to 28 USC §1332, §1441 and §1446, and §2201 where complete diversity of citizenship exists, and the amount in controversy is approximately $3,068,000.

9. Venue is proper in this district because the rights, obligations, and activities that give rise to this action were to be performed in the District of Nebraska.

## GENERAL ALLEGATIONS

10. On July 3, 2013, China Energy Corporation ("CEC"), a Nevada corporation, filed a Certificate of Amendment to its Articles of Incorporation, effecting a 1 for 12, 000,000 cash-out reverse split,

---

[1] *Bachelder v. America West Airlines, Inc.*, USDC Ariz. No. CIV-97-1942-PHX-ROS (May 10, 1999): "Defendant claims that Mark Bachelder lacks standing to bring this lawsuit because he has not alleged 'that he personally suffered any injury' from Defendant's conduct. However, as the Bachelders note, Arizona is a community property state. A.R.S. §25-211. As such, 'all property acquired by either husband or wife during the marriage is the community property of the husband and wife' with certain exceptions that are not relevant in the instant case. Id. " Affirmed Bachelder v. America West Airlines, 259 F. 3d 1112, 1118 n.1 (9th Circuit 2001); Patrick v. Alacer Corp., 167 Cal.App.4th 995, 1011 (Cal. Ct. App. 2008) (finding that plaintiff's alleged community property interest rendered her a beneficial shareholder which could confer standing to assert a derivative suit, recognizing that "'courts in California have historically given derivative suit standing requirements a liberal construction.'") (quoting LaHue v. Keystone Inv. Co., 496 P.2d 343, 350 (Wash. Ct. App. 1972) (holding that widow who held a presumptive community property interest in husband's stock at the time the stock was acquired, at the time of the alleged wrongdoing, and at the time she filed suit had standing to maintain a shareholder derivative action based on her one-half vested community interest in the stock).

3

eliminating all shareholders other than Mr. Ding, the CEO and majority shareholder and a citizen of China.

11. Prior to the reverse split, and in anticipation of the reverse split, Michael Sammons requested that Cede & Co., the shareholder of record for all shares of CEC shares beneficially owned by Michael and Elena Sammons, provide a "Consent Letter" which would have allowed Michael and Elena Sammons to handle perfecting their dissenter's rights on their own, pursuant to NRS 92A.400(2).[2]

12. DTC responded to the request by refusing to provide a "Consent Letter" and DTC further stated that if a shareholder wanted to dissent he or she must allow DTC to handle it for the beneficial shareholder, for which DTC would charge a fee of $400 for each broker account.

13. The 650,000 shares of CEC beneficially owned by Elena Sammons were registered in the name of Cede & Co., the nominee name of DTC.

14. On July 11, 2013, CEC's stock transfer agent, Quicksilver Stock Transfer, LLC ("Quicksilver") mailed (a) a form transmittal letter (for consenting stockholders) and (b) a dissenters' rights notice with a form demand letter attached ("Dissenter's Rights Package") to Cede & Co.

15. The Dissenter's Rights Package was received by Cede & Co. on or about July 15, 2013.

---

[2] NRS 92A.400(2) states that: "A beneficial stockholder may assert dissenter's rights as to shares held on his or her behalf only if the beneficial stockholder: (a) submits to the subject corporation the *written consent of the stockholder of record to the dissent* ..."

16. The Dissenter's Rights Notice sent to Cede & Co. stated that CEC must receive a Payment Demand letter and stock certificates from any dissenting shareholder desiring a judicial appraisal, within 30 days of delivery of the Dissenter's Rights Notice.

17. On or about July 29, 2013 Cede sent an Assertion of Dissenter's Rights letter to COR in Omaha, NE, for delivery to CEC in Nevada. This letter, on Cede & Co. letterhead and with a Cede signature, was addressed to CEC in Nevada.

18. The Cede letter stated that further correspondence should be addressed to "Elena Sammons, MD." However, this "fill-in-the-blank" letter contained two typos: (i) Elena Sammons' street address was listed as "145706 Seekers St", rather than the correct "15706 Seekers St", and (ii) the number of shares listed was "650,800" rather than the correct "650,000 shares."

19. On August 1, 2013 COR shipped the Cede letter overnight UPS delivery to CEC in Nevada. The letter was mis-delivered by UPS on August 2, 2013 and was ultimately delivered to CEC in Nevada on August 14, 2013.

20. On August 7, 2013, Elena Sammons delivered to CEC in Nevada a Payment Demand Letter, stating (a) the number of shares held prior to February 20, 2013, and (b) demanding 28.93 Chinese yuan per share for each of her 650,000 shares for a total of 18,804,500 Chinese yuan. This was equivalent to $4.72/share for a total of $3,068,000. This Payment Demand Letter had the correct address and number of shares.

5

21. On or about August 7, 2013, Cede & Co. delivered to COR in Omaha, NE, a withdrawal of the **first** "assertion of dissenters' rights" letter which was defective because it had the wrong address for Elena Sammons and the wrong number of CEC shares. With that letter COR simultaneously delivered a **second** "assertion of appraisal (or dissenters') rights" letter with the (correct total) of 650,000 shares of CEC.

22. The **second** Cede letter delivered by Cede to COR in Omaha, NE was also defective because it had the wrong beneficial owner listed (Delaware Charter Guarantee & Trust was listed rather than the correct beneficial owner, Elena Sammons).

23. On August 8, 2013 Quicksilver received a request from DTC for a new 650,000 share CEDC stock certificate to be shipped to the DTCC in New York.

24. COR delivered the second (defective) Cede letter to Quicksilver in Nevada on August 16, 2013, along with another copy of the first (defective) Cede letter.

25. On or about August 9, 2013 Elena Sammons delivered to CEC a copy of the original Cede letter, and a short letter noting the two typos in the Cede letter and requesting that the CEC records be corrected.

26. On August 8, 2013 the 650,000 shares of CEC were not represented by a specific certificate, but rather were "book entry" in the name of Cede & Co. on the books of Quicksilver. Cede and DTC required new CEC stock certificates for all CEC dissenting

shareholders even in cases where the Cede shares were "book entries" on the books of Quicksilver

27. The DTC required COR in Omaha, NE to request a new 650,000 share CEC stock certificate. The DTC delivered to COR in Omaha, NE a request from Cede to the CEC stock transfer agent in Nevada for the new certificate. When COR received the request from DTC, COR sent it to Quicksilver in Nevada.

> **FIRST DECLARATION SOUGHT:** A judicial declaration that the Defendants failed to properly assert dissenter's rights as required by NRS 92A.300-500 on behalf of the Plaintiffs, and as a result the Plaintiffs lost their right to judicial appraisal of their 650,000 shares of CEC.

28. Plaintiffs incorporate by reference each of the allegations previously stated in this Complaint as though set forth fully herein.
29. It was not necessary for the Defendants to order a new certificate for the 650,000 shares of CEC included in the Cede & Co. "book entry" total on the books of Quicksilver, because pursuant to NRS 92A.440(3) "once a stockholder ... in the case of uncertified shares makes a demand for payment that shareholder loses all rights as a stockholder."
30. The 650,000 "book entry" CEC shares in the name of Cede on the books of Quicksilver were "uncertificated" for purposes of NRS 92A.440(3).
31. By unnecessarily ordering a new physical stock certificate the Defendants created the risk of untimely delivery of such certificate

7

which, pursuant to the requirements in the Dissenters' Rights Notice, could terminate the right to appraisal.

32. The Defendants failed to deliver the new 650,000 share CEC certificate within the deadline stated in the Dissenters' Rights Notice and CEC elected to terminate the right to appraisal.

33. The joint decisions and actions of Cede & Co., the DTC, and COR Clearing, unnecessarily caused Quicksilver, the CEC stock transfer agent in Nevada, to print and deliver a new stock certificate for 650,000 shares, in the name of Cede & Co., to the DTC in New York. The DTC then sent the certificate to COR in Omaha, NE. Then COR returned the certificate to Quicksilver.

34. The 650,000 share stock certificate was not delivered to CEC within the time required by the Dissenters' Rights Notice and CEC elected to terminate the right to appraisal. COR delivered the certificate in the name of Cede to CEC in Nevada on or about September 26, 2013.

35. COR could have easily delivered the 650,000 share certificate to CEC within the deadline set in the Dissenter's Rights Notice but, without good cause, neglected to do so. The certificate was actually in the hands of CEC's stock transfer agent before the deadline, but for no valid reason the Defendants required the new certificate be sent by Quicksilver to the DTC and then to COR and then to back to Quicksilver. By the time it finally arrived back to where it started, the deadline had passed.

36. On or about September 27, 2013, CEC delivered to Elena Sammons a letter stating that due to the following alleged filing

8

errors the dissent and demand for appraisal for the 650,000 shares was invalid and her right to appraisal was terminated:

    (a) "Your stock certificate, registered in the name of CEDE & Co., was not deposited with the Company within the 30 days after the Dissenters' Rights Notice was delivered to CEDE & Co., as required in the Dissenters' Rights Notice and by NRS Section 92A.440(1)(c) and NRS Section 92A.440(5)."

    (b) (not relevant)

    (c) "It appears that the Shares with respect to which you have attempted to exercise dissenters' rights are actually legally and beneficially owned by Delaware Charter Guarantee & Trust FBO: Elena Sammons R/O IRA ("Fiduciary"), so that the demand and certifications required by NRS Section 92A.440 (1) were required to be made by the Fiduciary rather than you in your individual capacity."

    (d) "The first assertion of dissenters' rights made by CEDE & Co. on your behalf was subsequently withdrawn and voided by CEDE & Co. That assertion of dissenters' rights was deficient because it stated that you were the beneficial owner of the shares in your individual capacity and that you beneficially owned 650,800 Shares, which was also incorrect. Later, a new assertion of dissenters' rights was made by Cede & Co. with respect to such Shares on behalf of the Fiduciary. However, the new assertion of dissenters' rights was delivered to the transfer agent for the Company (rather than to the Company itself, as required by the terms of the Dissenters' Rights Notice) well after the deadline required by the Dissenters' Rights Notice and by NRS Section 92A.440(1)(b) and NRS 92A.440(5).

37. Each of the above reasons in #36 above was a valid legal reason for CEC to terminate and deny the Plaintiff's dissenter's rights.

38. On September 27, 2013, CEC filed a lawsuit in Nevada state court, subsequently removed to federal court in Nevada, claiming that Elena Sammons forfeited her dissenter's rights due to the above errors by Cede & Co.

39. Plaintiffs seek a declaration that the above actions by the Defendants resulted in a failure to perfect dissenter's rights for the Plaintiffs' 650,000 shares of CEC.

> **SECOND DECLARATION SOUGHT:** A judicial declaration that (i) the Plaintiffs were the intended third-party beneficiaries to the agreement or contract between the DTC and COR in which (a) DTC would be paid a fee of $400, (b) the Plaintiffs agreed to pay the $400, (c) COR would comply and follow, using DTC forms, DTC procedures for asserting dissenter's rights in Nevada, and (d) DTC agreed to take or specify those actions necessary to properly assert dissenter's rights in Nevada, or (ii) Plaintiffs were the intended third-party beneficiaries of the a duty of care owed by Cede/DTC to COR pursuant to UCC §8-506.

40. Plaintiffs incorporate by reference each of the allegations previously stated in this Complaint as though set forth fully herein.

41. COR agreed to collect a fee of $400 for DTC from the Plaintiffs. The Plaintiffs, through their broker Just2Trade, had to agree to the $400 DTC fee before COR, Cede, and DTC would act to assert the Plaintiffs' dissenter's rights.

42. COR and the DTC had an agreement in which COR would follow DTC's requirements and standard procedures for asserting dissenter's rights.

43. Cede was acting as a securities intermediary, UCC §102(a)(5), and COR was the entitlement holder identified on the Cede books as having a security entitlement against Cede as to the 650,000 shares of CEC, UCC §102(a)(7).

44. Plaintiffs were the intended third party beneficiaries in the agreement between COR and Cede/DTC in which (a) the Plaintiffs would pay a fee of $400, (b) DTC would be paid that $400, and (c) Cede/DTC would act with due care to take those steps necessary to perfect the Plaintiff's dissenter's rights under Nevada law.

45. As detailed in #36 above, the Defendants failed to exercise due care in accordance with commercial standards in asserting the Plaintiffs' dissenter's rights as required by UCC §8-506.

## PRAYER FOR RELIEF

**WHEREFORE**, Michael and Elena Sammons pray for relief against the Defendants as follows:

1. A judicial **declaration** that the Defendants failed to properly assert dissenter's rights as required by NRS 92A.300-500 on behalf of the Plaintiffs, and as a result the Plaintiffs lost their right to judicial appraisal of their 650,000 shares of CEC;

2. A judicial **declaration** that (a) the Plaintiffs were the intended third-party beneficiaries to the agreement or contract between the DTC and COR in which (i) DTC would be paid a fee of $400, (ii) the Plaintiffs agreed to pay the $400, (iii) COR would comply and follow, using DTC forms, DTC standard procedures for

11

asserting dissenter's rights in Nevada, and (iv) DTC agreed to take or specify those actions necessary to properly assert dissenter's rights in Nevada, or (b) Plaintiffs were the intended third-party beneficiaries of the a duty of care owed by Cede/DTC to COR pursuant to UCC §8-506.

3. Costs;
4. For such other and further relief in the Plaintiffs' favor as this Court deems just and proper.

Respectfully submitted:

_____
Elena Sammons, pro se

_____
Michael Sammons, pro se

# DELIVER BY 10:30 AM

Label 1030, January 2014
PSN 7690-17-000-0853

E…
OUR FAS…

WHEN USED INTERNATI…
A CUSTOMS DECLAR…
LABEL MAY BE REQU…

EMS

EP13F July 2013 OD: 1

PS10001000…

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE.

…USE ONLY

FROM: (PLEASE PRINT) PHONE (210) 558-6199

MICHAEL SAMMONS
15706 SEEKERS ST
SAN ANTONIO, TX 78255

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
- ☐ No Saturday Delivery (delivered next business day)
- ☐ Sunday/Holiday Delivery Required (additional fee, where available*)
- ☐ 10:30 AM Delivery Required (additional fee, where available*)

*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT) PHONE ( )

U.S. District Court
111 South 18th PLAZA #1152
Omaha, NE 68102

ZIP + 4® (U.S. ADDRESSES ONLY)
68102-

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

ORDER FREE SUPPLIES ONLINE

EK225006035US

…AILING LABEL HERE

UNITED STATES POSTAL SERVICE®

PRIORITY [redacted]IL ★ EXPRESS™

ORIGIN (POSTAL SERVICE USE ONLY)

| ☐ 1-Day | ☑ 2-Day | | ☐ DPO |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage $ | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | Insurance Fee $ | COD Fee $ |
| Time Accepted ☐ AM ☐ PM | 10:30 AM Delivery Fee $ | Return Receipt Fee $ | Live Animal Transportation Fee $ |
| Weight ☐ Flat Rate lbs. ozs. | Sunday/Holiday Premium Fee $ / Acceptance Employee Initials | Total Postage & Fees $ | |

DELIVERY (POSTAL SERVICE USE ONLY)

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature |

LABEL 11-B, JANUARY 2014 PSN 7690-02-000-9996 3-ADDRESSEE COPY

UNITED STATES POSTAL SERVICE.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.

